IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | Criminal Case No. SAG-22-00409 |
| WILSON CONSTANZA-GALDOMEZ, | * | |
| Defendant. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM OPINION**

Defendant Wilson Arturo Constanza-Galdomez is charged with offenses including conspiracy to participate in a racketeering enterprise and murder in aid of racketeering activity. Pending before the Court are Defendant's motions to suppress tangible evidence obtained from his person at the time of his arrest. ECF 79, 108.[1] This Court has reviewed the motions and associated briefing, ECF 88, 118. On June 2, 2025, the Court heard testimony and argument on Defendant's motions. After careful review of the record, for the reasons that follow, the Court will deny Defendant's motions to suppress.

**I.   BACKGROUND**

The following facts are derived from the testimony and exhibits presented at the motions hearing. Officers from the Baltimore County Police Department responded to an attempted murder on June 6, 2020. Interviews with the victim revealed that he knew his attackers, some of whom were arrested shortly after the attack. As the investigation developed, the BCPD linked the June 6,

---

[1] ECF 108 is characterized as a "supplemental motion" clarifying the argument asserted in ECF 79 on the basis of later-acquired information. The two motions present, then, identical legal issues and will be adjudicated together.

1

2020 attempted murder to two other murders that had occurred within the past two weeks, along with other attempted murders and kidnappings. The BCPD further concluded that the perpetrators were attempting to actively eliminated witnesses to their actions, which would include two victims of June 6, 2020 attacks who did not succumb to their injuries. Those victims were back in the community and did not have police protection.

On June 11, 2020, BCPD officers apprehended another suspect who provided authorities with a phone number linked to a suspect they had identified as "Marco." Officers also had photographs of Marco showing his distinctive tattoos. Marco's cellular service provider was TMobile, a company the BCPD views as one of the slowest in providing data to officers in response to court-ordered warrants.

Accordingly, then-BCPD Detective Atkins completed a "EXIGENT Request Form" asking TMobile to provide, in relevant part, continuous location information (at 15-minute intervals for 48 hours) for Marco's phone number. In Detective Atkins's experience, TMobile's response to exigent forms was near-instantaneous, as opposed to the longer wait period of up to five days in response to a court order. As the exigency, Detective Atkins listed "immediate danger of death of serious physical injury to any person," stating, "Suspect has made threats to witnesses and already actively killed and attempted to kill additional witnesses." She further included an attachment that explained:

> Suspect is responsible for a kidnapping and attempted murder within our jurisdiction. Suspect was also present for another kidnapping in another jurisdiction which resulted in a homicide and a second attempted murder. Suspect is known to victims and is attempting to actively eliminate by homicide any witnesses related to other assaults and homicides he has been involved in.

T-Mobile approved the exigent request and provided information that same day, which allowed BCPD officers to find Defendant (also known as "Marco") several hours later in Betty

Hyatt Park in Baltimore City. The officers arrested Defendant and, during the search incident to his arrest, located a blue bandanna, a knife, and his cellular telephone. They later searched the cellular telephone pursuant to a court-ordered warrant.

## II.   LEGAL STANDARDS

The government bears the burden of proving by a preponderance of the evidence that a warrantless search or seizure is lawful. *See Wong Sun v. United States*, 371 U.S. 471, 488 (1963); *United States v. Jeffers*, 342 U.S. 48, 51 (1951). The Supreme Court has recognized an "exigent circumstances" exception to the typical requirement that officers obtain a search warrant, "under which a warrantless search will be found valid under the fourth Amendment when 'there is compelling need for official action and no time to secure a warrant.'" *United States v. Hobbs*, 24 F.4th 965, 969 (4th Cir. 2022) (citations omitted). The Supreme Court has recognized, in relevant part, that "compelling need for official action" exists where there is a "need to protect individuals who are threatened from imminent harm." *United States v. Curry*, 965 F.3d 313, 321 (4th Cir. 2020). To make that determination, a court assesses the totality of the circumstances and the "officers' objectively reasonable belief based on specific articulable facts and the reasonable inference that could have been drawn" from them. *Id.* at 322 (quoting *United States v. Yengel*, 711 F.3d 392, 397 (4th Cir. 2013)).

## III.   ANALYSIS

The parties' dispute is whether sufficient exigency existed here to excuse the investigators' compliance with the warrant requirement. Much of the case law relating to exigency is unhelpful, as it pertains to warrantless entry into homes and residences, a circumstance presenting a much greater infringement of privacy interests than, as here, the short-term pinging of a defendant's cell phone. For guidance, then, this Court looks to the Fourth Circuit's decision in *United States v.*

*Hobbs*, 24 F.4th 965 (4th Cir. 2022), a case involving cell phone location data, and the case *Hobbs* cites as instructive authority, *United States v. Carabello*, 831 F.3d 95 (2d Cir. 2016).

First, in *Hobbs*, police responded to a domestic violence call. *Hobbs*, 24 F.4th at 967. The woman advised that her former boyfriend, Hobbs, had come to the home, brandished a semi-automatic handgun, and used the gun to break a window, enter the home, and remove a television. *Id.* While in the home, Hobbs threatened to kill the woman, her minor child, and other family and told her that if she called the police, he would also kill any responding officers. *Id.*

The officers escorted the woman to the police station for further interviewing, where she told them that Hobbs was "obsessed with firearms" and had been armed previously, and that he had a violent history including convictions for robbery and attempted murder. *Id.* at 967–68. On the basis of those facts, the officers submitted an exigent form to T-Mobile to ping Hobbs's phone. *Id.* at 968. After receiving the information, they found and arrested him within about six hours of the initial incident and within one hour of obtaining the pings. *Id.* The Fourth Circuit upheld the district court's ruling that the use of the exigent form had been appropriate. *Id.* at 972. It noted the woman's evident fear of Hobbs, his history of violence, the fact that the officers had probable cause to arrest him for the break-in and assault, and the limited intrusion on Hobbs's privacy rights that was "reasonably confined to the exigency." *Id.* at 971. The Fourth Circuit also reasoned, "And perhaps most notably, as in *Caraballo*, 831 F.3d at 99, 105, Hobbs' cell phone provider was known to be 'notoriously slow' in responding to law enforcement search warrants and could take several days to produce the necessary cell phone information." *Id.* The Fourth Circuit concluded that it agreed "with the district court's observation that even a brief delay in apprehending Hobbs placed many individuals at significant risk of harm." *Id.*

Given the Fourth Circuit's express reliance on *Caraballo*, a brief review of the facts of that case is also instructive. Officers responded to the scene of a homicide and identified the female victim as a person who had recently been arrested for a drug offense. 831 F.3d at 97–98. She had told her arresting officers a drug dealer with whom she associated, Caraballo, would kill her if he knew she was talking to the officer. *Id.* at 98. She also stated she knew him to have access to multiple firearms and to have committed assaults and even homicide on prior occasions. *Id.* She refused to cooperate with authorities because of her fear. *Id.*

Police independently began an investigation of Caraballo which included introduction of undercover agents and confidential informants. *Id.* The officers were concerned that if information had leaked about their investigation, the informants or undercover officers could be at risk. *Id.* As a result, they used an exigency request to request GPS location data from Caraballo's provider, Sprint, knowing that "Sprint's practice was to provide location information as soon as possible whenever law enforcement submitted such an emergency request form." *Id.* at 100. After Sprint began pinging the phone, officers located and arrested Caraballo within hours. *Id.* The Second Circuit concluded that the brutality of the woman's killing, the evidence that Caraballo would be armed, his status as the primary suspect in the murder, and Caraballo's prior threat to "kill" the homicide victim, lent credence to the notion that undercover agents and confidential informants were at imminent risk. *Id.* at 104–05. The Court also cited the evidence that "the officers' experience led them to believe that Sprint would respond much less quickly — to the tune of days or weeks — if pinging were sought through the warrant process." *Id.* at 105. It further noted that "the degree of the officers' intrusion into Caraballo's privacy was relatively slight" in that the pinging was "strictly circumscribed" to finding his location, nothing more. *Id.* at 105–106. On that record, the Second Circuit upheld the use of the exigency form.

5

In this Court's view, the facts in this case are analogous to those in *Hobbs* and *Caraballo*. Defendant argues that the potential harm here was less imminent than that in *Hobbs*, because the alleged perpetrator's actions had happened just hours before the exigent request in *Hobbs* and several days before the like request in this case. But the imminence (and likelihood) of further violent action can be impacted not only by temporal proximity but by a repeated pattern of conduct. In this case, the officers knew that Defendant had been linked to a spree of intentional, witness-directed violence over the past several weeks. Given the fact that his most recent attempt to kill witnesses had been unsuccessful, the investigators reasonably believed that those surviving witnesses, and others, were at imminent risk of harm despite the investigators' lack of concrete information about Defendant's activities in the five days since the attempted murder. The facts in this case fall between the facts in *Caraballo* (where the officers had less reason to believe that Caraballo would target their undercover agents and informants for imminent harm) and *Hobbs* (where violence had only been threatened, not acted upon, but the threats were more contemporaneous with the request). It is beyond dispute, though, that the record in this case justifies a need "to obtain a prompt response from the cell phone provider when an armed and dangerous suspect was at large." *Hobbs*, 24 F.4th at 972.

And as for the remaining circumstances, this case is on all fours with *Hobbs* and *Caraballo*. In all three cases, the intrusion into the defendants' privacy was very limited in scope, lasting only hours at most. And in all three cases, the investigating officers offered evidence that the cell phone providers responded far less quickly to court-ordered warrants than they did to exigent request forms, meaning that use of the latter would be required to obtain the requested information promptly even if a warrant could have been issued quickly by a court. In totality, then, this Court finds that the government has met the required standard to show exigent circumstances justifying

the limited intrusion into Defendant's privacy by asking TMobile to ping his phone to assist in his prompt apprehension.

### III. CONCLUSION

For the reasons stated above, the Court denies Defendant's motions to suppress, ECF 79, 108. A separate Order follows.


Dated: June 20, 2025                                    /s/
                                                Stephanie A. Gallagher
                                                United States District Judge