# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | CRIMINAL NO. 1:22-CR-409-SAG |
| | * | |
| WILSON ARTURO CONSTANZA- | * | |
| GALDOMEZ, | * | |
|     a.k.a Humilde, | * | |
|     a.k.a Marco Saravia, | * | |
| EDIS OMAR VALENZUELA- | * | |
| RODRIGUEZ, | * | |
|     a.k.a Little Felon, and | * | |
| JONATHAN PESQUERA-PUERTO, | * | |
|     a.k.a Truney, | * | |
| | * | |
|       Defendants. | * | |
| | * | |

**\*\*\*\*\*\*\***

## Government's Correspondence with Defense and Court

On September 4, 2025, at 8:44 p.m., the government sent the below correspondence to defense counsel and the Court:


Dear Judge Gallagher:

We join in Mr. Bardos' apology for the informal nature of this communication. In the interest of time, we thought it would be better to simply respond to Mr. Bardos' email rather than submit a formal filing. The government is prepared to do so, if the court decides formal briefing is required.

The government has communicated with Mr. Dubon (in the presence of his attorney) as well as Detective Al Barton from the Baltimore County Police Department to construct the following timeline and determine Mr. Dubon's understanding of what if anything occurred between him and BCoPD.

As noted in court by Mr. Nieto, Mr. Dubon was arrested for an unrelated Baltimore County offense in May of 2020. Baltimore County Police identified Mr. Dubon as a possible source of information regarding the murder of Gabriella Ardon because they had connected Mr. Dubon to the Macon Street incident and the individuals they were investigating for Gabby's murder. As a result, on June 5, 2020, Baltimore County Detectives removed Mr. Dubon from the detention center, interviewed him, and he provided the statement from the Baltimore County report that was reviewed in court today.

At that point, Mr. Dubon believed that he was a "cooperator" – in the sense that MS-13 would punish him for speaking with law enforcement. However, after that interview was done, Mr. Dubon had no further communication with the government until the FBI interviewed him on August 4, 2021.

Detective Barton had no further contact with Mr. Dubon after that June 5th interview. He never asked him to elicit information from any of the individuals involved; in fact, neither Det Barton nor any other individual from the Baltimore County Police Department asked Mr Dubon to do anything at all.

In the interest of full disclosure, Mr. Dubon did explain that he was providing information to jail officials, but that was completely unrelated to anything associated with crimes outside the jail system.

The government asserts that Mr. Dubon's use of the term "cooperator" relates solely to his one interview with Det Barton and he was not at any time an agent of the government.

With these facts in mind, we turn to some legal analysis. The government largely agrees with Mr. Bardos' earlier email, with the following additions:

As an initial matter, even though the government does not believe one occurred here, these defendants lack standing to raise Sixth Amendment violations that may have occurred related to Walter Orellana-Hernandez. Additionally, there is no Sixth Amendment problem where the defendants make threats to anyone, including a cooperator. As a result, the only potential Sixth Amendment issue concerns the alleged confession of certain details of the crimes by Mr. Valenzuela to Mr. Dubon.

Mr. Bardos is right to note the fact-specific nature of the inquiry as to whether Mr. Dubon elicited any information from Mr. Valenzuela. However, he neglects to discuss the other prong in this analysis: whether Mr. Dubon *was actually* an agent of the government, notwithstanding his *belief* that he was cooperating with Baltimore County Police. Based on the above reconstruction of the facts, and the cases below, the government argues that Mr. Dubon was not an agent of the government. Therefore there was no Sixth Amendment violation, regardless of whether the Court finds that Mr. Dubon elicited any information from Mr. Valenzuela or merely listened. Even further, Mr. Dubon stated in court that he did not ask Mr. Valenzuela any questions.

United States v. Love, 134 F.3d 595, 604 (4th Cir. 1998) ("The behavior of an informant who initiates contact with an indicted defendant—whether because of conscience, curiosity, or even potentially to curry an unpromised future favor from the government—cannot be attributed to the government");
and
Thomas v. Cox, 708 F.2d 132, 136 (4th Cir. 1983) ("for whatever reason [the informant] acted—whether "conscience," as the state court found, or "curiosity," as he testified, or even conceivably from an unencouraged hope to curry favor … he could not properly be

characterized, as could the informant in *Henry*, as 'a Government agent expressly commissioned to secure evidence.'" – quoting *Henry*).

Respectfully submitted,

By:    _____/s/_____

Grace Bowen
Trial Attorney
Violent Crime and Racketeering Section
U.S. Department of Justice
Tel.: (202) 365-5795